SHELBY PETROLEUM CORPORATION, Shelby Custom Construction, Inc. and Shelby Corporation, Appellants,

v.

William D. CROUCHER, Appellee.

No. 90–CA–000277–MR.

Court of Appeals of Kentucky.

Sept. 13, 1991.

W. Henry Jernigan, Jr., Stanton L. Cave, Jackson & Kelly, Lexington, for appellants.

Stuart K. Olds, Sword, Floyd, Moody, Bohannon & Eaves, Richmond, for appellee.

Before HOWERTON, HUDDLESTON and MILLER, JJ.

HUDDLESTON, Judge.

In this, the third appeal in a case which the parties agree has had a "long and tortured history," appellants seek reversal of a judgment of Madison Circuit Court which they claim impermissibly adjudicated issues which had been rendered moot by their payment into court of funds sufficient to satisfy a previously rendered judgment in favor of the appellee, William D. Croucher. Because we are satisfied that, despite the deposit of funds sufficient to satisfy the underlying judgment, there were remaining issues which the trial court retained jurisdiction to resolve, we will affirm its judgment.

To place the present appeal in context it is necessary to briefly review the history of this case which was initiated by Shelby Petroleum Corporation in 1979. On July 7, 1959, Shelby Petroleum leased a site for a Peer Service Station in Richmond, Kentucky, from Edith Ramsey. When the lease expired some twenty years later, Ms. Ramsey declined to deal with Shelby Petroleum and instead leased the property to William Croucher. Alleging that Croucher was its employee at the time he negotiated the lease, Shelby Petroleum sought to compel him to sublet the property to it and sought to recover lost profits and punitive damages.

The trial court found that although Croucher had negotiated the lease while still in the employ of Shelby Petroleum as an assistant service station manager, he nevertheless had not circumvented any interest of his employer as Ms. Ramsey "had already adamantly decided not to rent to [Shelby Petroleum]." Shelby Petroleum was ordered to vacate the premises and Croucher was given an opportunity to amend his counterclaim to seek recovery for profits lost as a result of Shelby Petroleum's wrongful occupancy of property which had been leased to him. Shelby Petroleum's appeal to this Court was unsuccessful and the case went back to the circuit court for a trial on the issue of damages.

In the second phase of this case, Croucher was awarded $45,000.00, representing lost profits of $1,500.00 per month for thirty months, additional rent amounting to $3,000.00, and $1,100.00 in incidental costs. The total award of $49,100.00 was affirmed upon Shelby Petroleum's appeal to this Court.

As the corporation had not posted a supersedeas bond and as it declined to voluntarily satisfy the judgment following its unsuccessful appeal, Croucher caused garnishment orders issued pursuant to KRS 425.501 to be served on banks in several communities believed to be depositories of monies belonging to Shelby Petroleum, doing business as Peer Service Station. When the banks responded that no funds were being held in accounts bearing this name, Croucher ascertained that a new assumed name was being used and so caused

garnishment orders to be issued for funds belonging to Shelby Petroleum, doing business as Bonus Distributors. In response to these orders, several banks froze funds in accounts bearing the name of Bonus Distributors pending further orders of Madison Circuit Court.

Rather than contesting the garnishment orders in Madison Circuit Court, a corporation known as Shelby Custom Construction, Inc., d/b/a Bonus Distributing Co., filed suit in Wayne Circuit Court in Monticello, Kentucky (where one of the banks to which a garnishment order had been directed was located), and obtained an *ex parte* restraining order prohibiting Croucher from seizing its bank accounts. The restraining order came too late. Prior to its issuance, a bank in Middlesboro, Kentucky, had delivered $49,100.00 to Croucher, a sum which he later surrendered to the clerk of Madison Circuit Court pursuant to that court's order.[1]

While all of this was going on, Croucher filed a motion in Madison Circuit Court seeking to have Shelby Petroleum's president and principal owner, K.R. Shelby, held in contempt for his repeated refusal to submit to a discovery of assets deposition.[2] In addition, Croucher sought (1) an order directing banks holding funds belonging to Shelby Petroleum to pay them into court to satisfy his judgment, (2) costs incurred and damages sustained as a result of action taken by Shelby Petroleum to thwart collection of the judgment, and (3) an order granting leave to amend and supplement his pleadings to join Shelby Custom Construction, Inc. as a party and to assert a claim that the transfer to it by Shelby Petroleum of its assets violated the Bulk Transfers Act, KRS 355.6–101 to 111, and should, therefore, be set aside.

Following a hearing on Croucher's motions, the court ordered the president of the several Shelby corporations to submit to a discovery deposition and to produce for inspection numerous documents requested by Croucher. In turn, Croucher was ordered to deposit with the clerk the $49,100.00 check received from the Middlesboro bank and to direct other banks holding funds belonging to Shelby Petroleum or Bonus Distributing to pay over to the clerk sums sufficient to satisfy Croucher's claim for post-judgment interest. Finally, Croucher was granted permission to amend his counterclaim to join as a party defendant and assert a claim against Shelby Custom Construction, Inc., a/k/a Shelby Corporation, arising out of the alleged transfer without adequate consideration to it of substantially all of the assets of Shelby Petroleum in an attempt to frustrate Croucher's efforts to collect his judgment.

An evidentiary hearing was scheduled for November 16, 1989, to consider Croucher's claim for costs incurred in attempting to collect his judgment in the face of determined opposition from the several Shelby corporations. Six days prior to the hearing, Shelby Petroleum deposited with the clerk the sum of $61,036.24 (the judgment award, together with interest through November 16, 1989) and moved the court to enter an order of satisfaction and dismissal.

At the hearing, the Shelby corporations challenged the jurisdiction of the court to conduct further proceedings on the ground that the payment into court of the amount of the judgment, together with accrued interest, left the court with no further issues to decide. The trial court rejected the challenge and proceeded to hear the case.

In its judgment, rendered in early January, 1990, the lower court determined that the transfer of assets from Shelby Petroleum to Shelby Custom Construction, Inc., a/k/a Shelby Corporation, was done with the intent to, and did, violate the Bulk Transfers Act, KRS 355.6–101 *et seq.*, and

---

**1.** A suit seeking $5,000,000.00 in damages was filed in the United States District Court for the Eastern District of Kentucky at London against the Middlesboro bank by Shelby Custom Construction, Inc., a Tennessee corporation now renamed Shelby Corporation, which claimed that the bank had wrongfully taken possession of its funds and turned them over to Croucher in response to the Madison Circuit Court garnishment order. The complainant denied that Shelby Petroleum had ever done business as Bonus Distributing Company.

**2.** KRS 426.381.

KRS 378.010, the statute voiding fraudulent conveyances. The court also found that Croucher and his counsel "had every right to proceed in the fashion that they did to satisfy his judgment ... and all such actions taken by [Croucher] and his counsel were proper."

Based upon its findings, the court ruled that the orders of garnishment were properly issued and served and it relieved Croucher and his counsel "from any liability as a result of the issuance of such orders." The court then determined that all costs incurred by Croucher, including "execution costs, garnishment costs, sheriff's fees, and mileage to the various banking facilities directed to appear before the Court at the hearing of this matter," should be paid to Croucher by the clerk from the funds which had been garnisheed then on deposit in her office, with the balance of such funds to be remitted to Shelby Petroleum.

On appeal, the Shelby corporations raise but one issue: Did the payment into court of a sum sufficient to satisfy the judgment and accrued interest conclude the matter and deprive the trial court of the power to rule on the validity of the garnishment orders issued in aid of execution and to tax costs incurred by the judgment creditor in his attempt to collect the damages which it had been awarded? Under the circumstances present in this case, we are of the opinion that it did not.

"It is the universal rule," Kentucky's high court has said, "that courts will not consume their time in deciding moot cases, and have no jurisdiction to do so." *Louisville Transit Co. v. Department of Motor Transportation*, Ky., 286 S.W.2d 536, 538 (1956).

A moot case is one which seeks a judgment on a pretended controversy, when in reality there is none, or a decision in advance about a right before it has been actually asserted and contested, or a judgment upon some matter which, when rendered, for any reason, cannot have any practical effect upon a then existing controversy. *Id.*

■ Ordinarily, an opponent's voluntary performance of an act sought to be enforced by the complaining party is held to render a case moot where the performance resolves all issues presented in the case. However, one party's payment of merely part of a judgment in favor of another party has been held not to render the case moot. *See* the cases collected in an annotation entitled "What circumstances render civil case, or issues arising therein, moot so as to preclude Supreme Court's consideration of their merits?", 44 L.Ed.2d 745, 755–756.

■ In this case the original judgment awarding Croucher $49,100.00 and interest was satisfied by the November 10, 1989, payment into court by Shelby Petroleum of the sum of $61,036.24. However, by the time the payment was made, additional claims for injunctive relief, damages and costs had been asserted as authorized by CR 15.04. While some of Croucher's claims became moot after the deposit into court, others, including his subsequent claim for punitive damages resulting from the Shelby corporations' alleged malicious and intentional conduct in attempting to place the assets of the judgment debtor beyond the reach of Croucher's execution and his claim for costs and attorney's fees, did not.

■ A court has the authority "to enforce its own judgments and to remove any obstructions to such enforcement." *Akers v. Stephenson*, Ky., 469 S.W.2d 704, 706 (1970). *See also, E.I.C., Inc. v. Bank of Virginia*, Ky.App., 582 S.W.2d 72 (1979), and *Lincoln Bldg. & Loan Assn. v. Humphreys*, 274 Ky. 359, 118 S.W.2d 736 (1938); and *see generally*, 46 Am.Jur.2d *Judgments*, Sec. 898, p. 1032 (1969). It also has, as the authorities cited point out, "the right to invoke the contempt power in enforcing a judgment." *Akers v. Stephenson, supra* at 706.

It is not apparent from the record before us that at the November 16, 1989, hearing Croucher pursued his claim for punitive damages or his claim for attorney's fees. He did, however, seek to recover the costs he had expended in his several attempts to

collect his judgment in the face of determined and extra-legal resistance from Shelby Petroleum and its sister corporation. Most of these costs would not have been incurred had it not been for what the trial court determined was an illegal transfer of assets from one of the Shelby corporations to another. In order for the trial court to make the award that it did, it was necessary that it conduct a hearing and make findings in support of its award. It did not exceed its jurisdiction in doing so.

The judgment of Madison Circuit Court from which this appeal is taken is affirmed.

All concur.