**E. David MARSHALL; Susan Hardy and Clay Avenue, LLC, Appellants,**

v.

**Hon. Pamela R. GOODWINE, Judge Fayette Circuit Court Division Four, Appellee.**

and

**Dermot Halpin and Hilary Halpin, Real Parties In Interest.**

No. 2009–SC–000495–MR.

Supreme Court of Kentucky.

Aug. 26, 2010.

Rehearing and Modification Denied March 24, 2011.

---

David R. Marshall, Lexington, KY, Counsel for Appellant, E. David Marshall.

James A. Shuffett, Lexington, KY, Counsel for Appellant, Susan Hardy.

Robert Lee Abell, Lexington, KY, Counsel for Appellant, Clay Avenue, LLC.

Hon. Pamela R. Goodwine, Judge, Fayette District Court, Lexington, KY, Counsel for Appellee.

James Roscoe Stinetorf, Thomas Dulaney Bullock, Harold Lewis Kirtley, II, Bullock & Coffman, LLP, Lexington, KY, Counsel for Dermot Halpin and Hilary Halpin, Real Parties in Interest.

Opinion of the Court by Justice ABRAMSON.

E. David Marshall, Susan Hardy, and Clay Avenue, LLC appeal from a July 9, 2009 Opinion of the Court of Appeals denying their petition for a writ prohibiting

Fayette Circuit Judge Pamela Goodwine from conducting a contempt hearing. The circuit court has ordered the appellants to show cause why they should not be held in contempt for obstructing enforcement of the court's 2005 judgment in favor of the real parties in interest, Dermot and Hilary Halpin. Appellants contend that the reversal on appeal of the 2005 judgment rendered the enforcement issues moot and so abrogated the circuit court's authority to order proceedings meant to vindicate the nullified judgment. We agree and therefore reverse and remand to the Court of Appeals for issuance of a writ.

### RELEVANT FACTS

In 2003 the Halpins brought suit against Susan Hardy's husband, Bill Hardy, and others for alleged Consumer Protection Act violations in conjunction with the sale of a large-screen television. Following a jury trial in May 2005, the Halpins were awarded damages, fees, and expenses in excess of $140,000.00. The judgment was entered in July 2005 and became final and appealable in October of that year. In the meantime, the Hardys consulted an attorney, E. David Marshall, regarding whether Susan's assets could be separated from Bill's and shielded from the judgment. Marshall's advice included the formation of, and transfer of assets to, Clay Avenue, LLC. Having learned of the transfer, in August 2005 the Halpins filed suit against the Hardys and Clay Avenue LLC alleging the fraudulent concealment of assets in derogation of their rights under the July 2005 judgment. Their complaint was eventually amended to add attorney Marshall as a defendant.

Bill Hardy appealed from the 2005 judgment, and then in May 2006 paid the Halpins $154,897.82 and filed a notice of satisfaction of judgment. A series of motions followed, none of which proved dis-

positive, in which the parties debated the continuing viability of the Halpins' 2005 complaint. In April 2007, the Court of Appeals reversed in its entirety the July 2005 judgment and remanded for a new trial. In September 2008, this Court denied discretionary review. Appellants thereupon moved for summary judgment on the ground that the nullification of the 2005 judgment rendered the 2005 enforcement complaint moot. The Halpins responded by moving to have Appellants held in contempt for resisting enforcement of the reversed judgment. By order entered January 20, 2009, the trial court denied Appellants' motion for summary judgment and scheduled a hearing at which Appellants were to show cause why they should not be held in contempt. That order prompted the petition now before us for a writ prohibiting the show cause hearing. In denying the petition, the Court of Appeals held that because Appellants had not yet been found in contempt their petition was not ripe and also that the circuit court was acting within its jurisdiction by invoking its contempt power to enforce its 2005 judgment. We are convinced that the trial court is acting outside its authority, however, and that therefore the ripeness question is not reached.

### ANALYSIS

As the parties and the Court of Appeals correctly note, writs of prohibition and mandamus are reserved for those rare instances when "(1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) ... the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice or irreparable injury will result if the petition is not granted."

*Hoskins v. Maricle,* 150 S.W.3d 1, 10 (Ky. 2004). We review the Court of Appeals' writ decisions under an abuse of discretion standard, reversing only where the grant or denial of relief was erroneous as a matter of law, was not based on substantial evidence, or was otherwise clearly unreasonable. *Grange Mutual Insurance Company v. Trude,* 151 S.W.3d 803 (Ky. 2004).

## I. The Trial Court Is Without Authority To Vindicate A Reversed Judgment.

■ In ruling that Appellants' petition did not satisfy the writ standard, the Court of Appeals relied on *Newell Enterprises, Inc. v. Bowling,* 158 S.W.3d 750 (Ky.2005), in which we denied a petition for a writ to prohibit a contempt hearing and noted that "Appellants have not been held in contempt. They petitioned the Court of Appeals before the circuit court held the scheduled contempt hearing." 158 S.W.3d at 757. Apparently understanding this passage as foreclosing relief in all contempt cases until a finding of contempt has been made, the Court of Appeals rejected Appellants' petition as premature. In *Newell,* however, the petitioner sought relief under the second prong of the writ standard, which requires a showing of irreparable injury were the writ denied. The quoted passage was part of our discussion of how that requirement could not be met until the petitioner had been found contemptuous. In the very next paragraph we observed that the petitioner might well have fared better under the first prong of the writ standard, the outside-of-its-jurisdiction prong, as the show-cause order at issue appeared to be outside the trial court's "jurisdiction to render the particular judgment sought, or as is sometimes said, jurisdiction of the particular case." *Id.* Because Appellants here are proceeding under the first prong of the writ standard, not the second, the Court of Appeals' reliance on *Newell* was misplaced.

The Court of Appeals further held, however, that the petitioners had failed to demonstrate that the circuit court was proceeding outside its jurisdiction. Citing *Shelby Petroleum Corp. v. Croucher,* 814 S.W.2d 930 (Ky.App.1991), and *Akers v. Stephenson,* 469 S.W.2d 704 (Ky.1970), the Court of Appeals observed that a trial court enjoys wide discretion in the use of the contempt power "to enforce its own judgments and remove any obstructions to such enforcement." *Akers* at 706. As does this case, *Shelby Petroleum* involved claims that a judgment creditor had incurred costs and damages attempting to enforce a judgment against a recalcitrant judgment debtor. On the basis of that similarity, the Court of Appeals concluded that the trial court had authority to invoke contempt proceedings whenever there were allegations that a party had attempted to obstruct enforcement of a judgment. Again, however, the Court of Appeals read the case law too broadly.

While we have no quarrel with the general proposition that trial courts enjoy broad contempt authority to vindicate their judgments, that authority does not exist if there is no judgment to vindicate. *Akers* and *Shelby Petroleum* both involved the enforcement of viable judgments. Here, on the other hand, the trial court is presuming to vindicate a judgment that has been reversed. It has long been the law in Kentucky that the complete reversal of a judgment nullifies it and returns the parties to the positions they occupied before it was rendered. "A judgment which has been reversed is as though it had never been, and the court should not allow the party who procured it to retain an advantage gained by reason of it." *Knight's Admr. v. Illinois Central Railroad Co.,* 143 Ky. 418, 136 S.W. 874, 875 (1911);

*Drury v. Franke,* 247 Ky. 758, 57 S.W.2d 969 (1933) (same); *Baker's Heirs v. Duff,* 238 S.W.2d 841 (Ky.1951) (no rights can be derived from a reversed judgment).

The Halpins' 2005 complaint rests entirely on rights derived from the 2005 judgment. The reversal of that judgment nullified those rights, rendered them as though they had never been, and thus mooted the Halpins' claims based on them. The trial court's invocation of potential contempt sanctions for Appellants' alleged breach of those rights is a blatant attempt on the one hand to address moot questions and on the other to disregard, in a backdoor fashion, the effect of the Court of Appeals' reversal of its 2005 judgment. Considered in either light, the trial court is proceeding outside its jurisdiction. *Commonwealth v. Hughes,* 873 S.W.2d 828 (Ky. 1994) (mootness typically arises from a change in circumstance that vitiates the action, and when it does it abrogates the court's jurisdiction to address the action); *Buckley v. Wilson,* 177 S.W.3d 778 (Ky. 2005) (trial court must give effect to appellate court rulings). Stated simply, the trial court has no authority to "vindicate" a judgment that has been reversed and thus rendered nonexistent. The Court of Appeals erred by ruling otherwise. While it may be unfortunate that the Halpins incurred costs attempting to enforce the 2005 judgment, they were on notice that the judgment could be or had been appealed and was subject to reversal, and so must be deemed to have proceeded at their own risk.

## II. The Decision Here Is Not Governed By The Law Of The Case.

The Halpins contend, finally, that this result is contrary to the law of the case. While the original appeal was pending in the Court of Appeals, Bill Hardy petitioned for a writ mandating the dismissal of the Halpins' 2005 enforcement action on the ground that until the original appeal was decided the Halpins' right to enforcement was not ripe. The Court of Appeals rejected that argument and noted that under our law a judgment that has not been superseded or otherwise stayed may be enforced during the pendency of an appeal. The Court concluded that the Halpins' enforcement action was not barred on ripeness grounds. The Court of Appeals entered its order denying Hardy's petition on March 19, 2007, and Hardy timely appealed to this Court.

On April 6, 2007, a different panel of the Court of Appeals rendered its Opinion reversing the Halpins' 2005 Judgment. The Halpins moved for discretionary review. In the meantime, Hardy's appeal in the writ action went forward. In September 2008, this Court denied the Halpins' motion for discretionary review, and in June 2009 we rendered an Opinion affirming the Court of Appeals' denial of Hardy's writ petition.

Although we acknowledged in the Opinion that between the Court of Appeals' ruling and ours the Halpins' 2005 judgment had been reversed, we did not address what if any effect that reversal had on Hardy's writ petition, nor did we have before us or address what if any effect the reversal had on the Halpins' underlying 2005 enforcement action. Our analysis focused on the question addressed by the Court of Appeals: Does the pendency of an appeal preclude as unripe an action to enforce an unsuperseded judgment? We agreed with the Court of Appeals that it does not and held as follows:

Kentucky law makes it clear that an appellant who fails to file a supersedeas bond does so at his own risk and that execution may proceed.... Since Kentucky law makes it clear that the holder of a judgment on appeal is entitled to seek enforcement of that judgment if no supersedeas bond has been filed, efforts

to enforce such judgments are "ripe" and constitute a justiciable controversy.' *Hardy v. Goodwine*, No. 2007–SC–00284–MR, 2009 WL 1830782, at *2 (Ky. June 25, 2009) (citations omitted). We concluded that the Court of Appeals had properly denied Hardy's petition for a writ.

The Halpins would convert that ruling and our acknowledgment of the fact that the 2005 judgment had been reversed into a blanket endorsement of the trial court's jurisdiction to address their enforcement efforts even subsequent to the reversal, but as noted, our prior ruling was limited to the question of ripeness during the pendency of an appeal. The effect of the reversal of the Halpins' 2005 judgment was neither before us nor addressed in the prior Opinion, and thus the new issues before us here arising from that reversal do not implicate the law of the case.

## CONCLUSION

In sum, with few exceptions not relevant here, the complete reversal of a judgment nullifies it, renders it as though it had never been. Upon reversal, therefore, the party who procured the reversed judgment is divested of all rights derived from it, and the issuing court is divested of authority to "vindicate" it, such as here by purporting to sanction a party alleged to have obstructed enforcement. Because the Fayette Circuit Court is acting outside its jurisdiction in subjecting Appellants to contempt proceedings, Appellants are entitled to a writ prohibiting those proceedings. The Court of Appeals erred by denying that relief, and accordingly, we reverse its July 9, 2009 Opinion and remand to that Court for an appropriate order.

All sitting. All concur.