RENDERED:  MAY 22, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0092-MR


FRANK L. ALEXANDER, II AND
ROYA ALEXANDER                                          APPELLANTS


|          | APPEAL FROM JEFFERSON CIRCUIT COURT |
|----------|----------------------------------------|
| v.       | HONORABLE MITCHELL PERRY, JUDGE        |
|          | ACTION NO. 13-CI-004714                |


PAMELA HOLLADAY AND THE
ESTATE OF KIRBY HOLLADAY                                  APPELLEES

AND


NO. 2025-CA-0118-MR


PAMELA HOLLADAY AND THE
ESTATE OF KIRBY HOLLADAY                          CROSS-APPELLANTS


|          | CROSS-APPEAL FROM JEFFERSON CIRCUIT COURT |
|----------|----------------------------------------------|
| v.       | HONORABLE MITCHELL PERRY, JUDGE              |
|          | ACTION NO. 13-CI-004714                      |


FRANK L. ALEXANDER, II AND
ROYA ALEXANDER                                      CROSS-APPELLEES

<u>OPINION AFFIRMING APPEAL NO. 2025-CA-0092-MR AND
AFFIRMING APPEAL NO. 2025-CA-0118-MR IN PART, REVERSING IN
PART, AND REMANDING</u>

\*\* \*\* \*\* \*\* \*\*

BEFORE:  THOMPSON, CHIEF JUDGE; L. JONES AND McNEILL, JUDGES.

JONES, L., JUDGE:  This is the third appeal directly involving the scope and interpretation of an easement for ingress, egress, and parking between two adjoining landowners in Jefferson County, Kentucky.  Pamela Holladay and the Estate of Kirby Holladay (Holladays[1]) own the dominant estate; Frank and Roya Alexander (Alexanders) own the servient estate.[2]  Both appeal from the trial court's December 20, 2024 order which, among other matters, required the Alexanders to reconstruct a parking pad on the easement and denied the Holladays' request for an injunction.  We affirm Appeal No. 2025-CA-0092-MR.  And, in Appeal No. 2025-CA-0118-MR, we affirm in part, reverse in part, and remand for entry of an order granting a permanent injunction.

---

[1] Though Kirby Holladay has passed away, for the sake of convenience we shall refer to the Appellants/Cross-Appellees as the Holladays.

[2] "The land benefiting from an easement is called the *dominant estate*; the land burdened by an easement is called the *servient estate*."  *Easement*, BLACK'S LAW DICTIONARY (12th ed. 2024).

-2-

# I. RELEVANT FACTUAL AND PROCEDURAL HISTORY

These appeals stem from an easement granted by a predecessor in title

of the Alexanders' property to a predecessor in title of the Holladays' adjacent

property. The easement's relevant terms are:

> WHEREAS, the Grantors and Grantee are the owners of adjacent properties and desire to cooperate to provide a parking and access area for the benefit of both the Grantors and Grantee, whereby access is given to the Grantee across the property of the Grantors, and parking area is provided on the property of the Grantors. . . .
>
> Therefore, in consideration of One Dollar and other good and valuable consideration, consisting of Grantee's performance of work in developing the parking area and the access way and the Grantee's agreeing to bear the cost of same, the Grantors hereby grant, assign and convey this easement in, to and upon and over that portion of Tract A, described as follows:
>
> > Consisting of the southernmost fifteen (15) feet of Tract A, extending from the east boundary of Tract A, which is contiguous with the east boundary line of Tract B.
> >
> > *The purpose of the easement is to provide pedestrian and vehicular access, ingress and egress from the alley* between Fourth Avenue and St. James Court, which is contiguous with the east boundary line of Tract A, across Tract A for the benefit of Tract B.
> >
> > The Owner of Tract B, in further consideration of the granting of this easement, hereby covenants to maintain and make necessary repairs to the paving and landscaping and to develop parking spaces for the benefit of Tract B.

*Holladay v. Alexander*, No. 2015-CA-001718-MR, 2018 WL 2992976, at \*1 (Ky. App. Jun. 15, 2018) (unpublished) (hereinafter *Holladay I*)[3] (emphasis added).

A predecessor in title of the Holladays' property cleared the land subject to the easement sufficiently to allow a four-wheel-drive vehicle to park there. *Id.* The Holladays further developed the space by erecting retaining walls and constructing a concrete parking pad. *Id.*

Relations between the Holladays and Alexanders deteriorated. The Alexanders "declared that they did not recognize the validity or existence of an easement" and "began leaving a rental car parked in the easement area, as well as spray painted their Magnolia Avenue address on the concrete pad and posted a sign that any car parked there would be towed." *Id.* at \*2. The Holladays filed an action in the Jefferson Circuit Court "seeking a declaration of rights establishing their dominant estate property rights in the easement, an injunction prohibiting the Alexanders from interfering with those property rights, and damages." *Id.*

---

[3] On February 7, 2019, our Supreme Court denied discretionary review and ordered our opinion in *Holladay I* not to be published. Thus, *Holladay I* is not binding precedent generally but is binding on the "the parties concerned[.]" *Normandy Farm, LLC v. Kenneth McPeek Racing Stable, Inc.*, 701 S.W.3d 129, 137 (Ky. 2024). Under longstanding Kentucky precedent, "[t]he opinion of the appellate court upon a former appeal is the law of the case insofar as the issues and evidence upon subsequent trial are the same without regard to whether the first opinion was right or wrong." *Finley v. Thomas*, 134 S.W.2d 243, 244 (Ky. 1939). *Holladay I* thus was, and remains, the binding law of this case despite our Supreme Court having ordered it not to be published.

The trial court found the easement was valid, but that the Holladays had exceeded its scope. The trial court ordered the land subject to the easement be "restored to a flat pad with no improvements" at the Holladays' expense.[4] The court also held "the flat pad is to be used by both parties, each unencumbered by the other."[5] The Alexanders appealed the portion of the decision holding the easement ran with the land; the Holladays appealed the portion of the decision holding they had exceeded the easement and had to return the easement to a flat pad with no improvements. The trial court did not make any explicit decisions regarding the Holladays' request for injunctive relief, but the overall tenor of the court's decision functioned as an implicit denial of their request.

In *Holladay I*, we affirmed the trial court's conclusion that the easement was valid and ran with the land. *Id.* at *3-4. We also reversed the trial court's conclusion that the concrete parking pad constructed by the Holladays exceeded the scope of the easement. *Id.* at *5-8. First, we rejected the trial court's conclusion that the retaining walls erected outside the easement "equated to a taking of the property, which exceeded the scope of the easement." *Id.* at *5.

Instead, we explained in *Holladay I*:

> Regardless of the physical appearance of the parking area as a whole, the actual part within the

---

[4] Trial Record (R.) at 716.

[5] R. at 716.

easement complies with the language of the easement agreement. We are unconvinced that the Holladays can be forced to remove retaining walls located on their own property or that of the other neighbor, who is not a party to this action. Certainly nothing in the language of the easement agreement prohibited the construction of retaining walls outside of the easement area. There is similarly no basis in Kentucky law to find that the appearance of the surrounding area of an easement alone dictates whether or not it exceeds the scope of the easement language. Thus, we are compelled to conclude that the trial court erred in ruling as such.

*Holladay I*, 2018 WL 2992976, at \*5 (footnote omitted).

Second, we rejected the trial court's conclusion that "an agreement that provides parking for the benefit of only the dominant estate to the exclusion of the servient estate would constitute a taking of the property." *Id.* at \*6. To the contrary, as we explained, "parking easements can provide parking rights to one party to the exclusion of the other without exceeding the scope of the easement. Simply because one party has the right to park in the easement, thus blocking the other party from doing so does not violate Kentucky law so long as the easement language unambiguously provides for such." *Id.* at \*7.

Finally, we ended our opinion by recognizing the Alexanders' loathing of the easement did not mean the Holladays had exceeded its scope:

While the Alexanders may find the current situation frustrating, they purchased the property subject to the easement and the burden it entailed. The easement language unambiguously establishes that a parking area was to be created on the Alexanders' property for the

-6-

> benefit of the Holladays' property.  To effectuate the intent of the parties in making the easement, the easement language must be interpreted as giving the Holladays superior right to the easement area. . . .
>
> Accordingly, we agree with the trial court's determination that the Holladays' and Alexanders' predecessors in interest intended to create a valid and enforceable permanent easement that binds the current parties in this matter.  However, we further conclude that the trial court erred in determining that the current improvements violate the scope of the easement language.

*Holladay I*, 2018 WL 2992976, at *7-8.  Although we did not explicitly require it, the tenor of our opinion in *Holladay I* showed we expected the trial court to explicitly address the Holladays' request for an injunction on remand.  That did not occur.

On remand, the trial court held a bench trial in early 2022.  Kirby Holladay testified how Frank Alexander had interfered with the Holladays' use and enjoyment of the easement.  *Holladay v. Alexander*, No. 2022-CA-0537-MR, 2023 WL 4981690, at *1 (Ky. App. Aug. 4, 2023) (unpublished), *disc. rev. denied* (Jan. 10, 2024) (hereinafter *Holladay II*).  However, "Mr. Holladay admitted he had accidentally performed some work outside of the easement area and that one of the walls he constructed around the easement was on the Alexanders' property." *Id.* Holladay also admitted he had used the easement to hold a yard sale and had allowed a pet and grandchild to play on land subject to the easement because he

believed the easement allowed those uses by the dominant estate. *Id.* "The Alexanders did not testify." *Id.*

The trial court surprisingly declared the easement void "because the parties could not get along." *Id.* at *2. Despite our holding in *Holladay I*, the trial court again concluded the Holladays had gone "far beyond the scope of the easement" to the point of "effectively attempting an unprecedented taking of private property."[6] The trial court held the Alexanders had been "left to contest and reckon with all the responsibilities of land use, while enjoying none of the benefits of fee simple ownership."[7] The trial court noted in passing that the Alexanders had "taken actions to aggravate, exacerbate, and escalate the situation" by "provocation and harassment[.]"[8] Nonetheless, the court terminated the easement.

The trial court required the Alexanders to "return the land to the same condition at the time the Easement was granted."[9] The practical impact of that decision would allow the Alexanders to demolish the concrete parking pad and

---

[6] R. at 2771.

[7] R. at 2773.

[8] R. at 2774.

[9] R. at 2774.

remove the retaining walls installed by the Holladays. For the second time, the trial court did not expressly address the Holladays' request for an injunction.

The Holladays appealed, and asked the trial court to stay its decision until the conclusion of the appellate process. The Alexanders do not dispute the Holladays' contention that they (the Alexanders) opposed that request. Unfortunately, the trial court refused to stay its decision. The trial court set a supersedeas bond of $25,000.00 (over eight times the amount deemed appropriate by the Holladays). The Holladays declined to post that bond. Thus, even though there was an appeal pending and therefore the trial court's decision was subject to reversal, the Alexanders returned the land governed by the easement to the condition it was in prior to the easement's creation.

The Holladays raised three arguments in *Holladay II*: (1) the trial court erred by terminating the easement; (2) the trial court erred by finding they had violated the easement; and (3) the trial court should have issued an injunction. We agreed with the first two arguments. Because the trial court had not expressly addressed the Holladays' request for a permanent injunction, we remanded that issue to the trial court.

First, we noted it was wholly improper for the trial court to terminate an easement "simply because the parties could not get along." *Holladay II*, 2023 WL 4981690, at *2. Though the trial court chose to focus almost exclusively on

what it perceived to be improper acts by the Holladays, we noted that "according to the evidence, Mr. Alexander was the primary agitator." *Id.* We expressly reminded the trial court that "[j]ust because Mr. Alexander dislikes the servitude or disagrees with its existence, or because the parties cannot coexist peacefully, does not mean the purpose of the servitude can no longer be accomplished. The remedy for continued interference by Mr. Alexander is an injunction." *Id*. at *3.

We also disagreed with the trial court's conclusion that the Holladays had "misuse[d] the easement" and had "attempt[ed] an unprecedented taking of private property." *Id.* (internal quotation marks omitted). We stressed that the trial court had "made no findings to support this conclusion." *Id.* And we reminded the trial court of our holding in *Holladay I* that "neither the concrete pad nor brick retaining walls violated the scope of the easement. While one of the retaining walls was constructed on the Alexanders' property outside the easement, that wall has since been removed, and this act alone cannot work to support a forfeiture." *Id.* We also held that many of the alleged misuses by the Holladays, such as having used the easement for a yard sale or as a child's play area, were "not substantial enough to terminate the easement." *Id.* at *4.

Finally, we did not definitively decide whether the Holladays were entitled to an injunction. Instead, since the trial court had not explicitly addressed that issue, we held as follows:

-10-

Lastly, the Holladays argue the trial court erred in failing to grant injunctive relief restricting the Alexanders from interfering with their use and enjoyment of the easement. Injunctive relief is an extraordinary remedy and is best left to the sound discretion of the trial court. *Maupin v. Stansbury*, 575 S.W.2d 695, 697 (Ky. App. 1978) (citations omitted). Further, [Kentucky Rule of Civil Procedure] CR 52.01 states, "in granting or refusing temporary injunctions or permanent injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action." Here, the trial court implicitly denied the Holladays' claim for injunctive relief when it terminated the easement, however it did not explicitly address the claim in its order or make any related findings. Because we have found the trial court erred in terminating the easement, we remand the issue of whether a permanent injunction against the Alexanders' interference with the Holladays' use and enjoyment of the easement is appropriate.

*Holladay II*, 2023 WL 4981690, at *4.

On remand from *Holladay II*, the trial court issued the ruling at issue in these appeals. First, the trial court stressed its vehement disagreement with our decisions in *Holladay I* and *Holladay II*.

Next, the trial court noted that the Alexanders had "erected an embankment with fencing blocking the Easement[,]" in order "to return the land to its original state and allegedly to bring it into compliance with Louisville Metro ordinances and zoning restrictions."[10] The trial court declared that the Alexanders'

---

[10] R. at 3089.

removal of the parking pad was "indefensible" pursuant to the holding of *Holladay II*.[11]  The trial court, remarkably, did not discuss that its prior order had directed the Alexanders to destroy the improvements to the easement (and the court, regrettably, had refused to stay that decision).  Instead, the trial court summarily required the Alexanders to "remove the blockage they have constructed and return the area to the flat concrete parking pad described and originally envisioned."[12]

Next, the trial court denied the Holladays' request for an injunction.  However, the trial court disregarded our directive in *Holladay II* to make findings of fact and conclusions of law which adequately explained its decision.  In its entirety, the trial court's analysis of the Holladays' request for an injunction is:

> In sum, the Court declines to grant a permanent injunction in this case.  The Court has given plain and clear instruction to the parties that they are to strictly comply with the plain language of the Easement Agreement.  That is, the easement area is to be developed and maintained by the Holladay's [sic] for the express purpose of parking, ingress and egress, a*nd nothing else*.  As far as this Court is concerned, that is all there is to say on the matter.  The Court can see no exigent circumstances requiring continuing jurisdiction over these parties into perpetuity.  While there may be ongoing issues with various local governmental organizations, those proceedings are beyond the scope and jurisdiction of this Court and therefore further

---

[11] R. at 3089.

[12] R. at 3089.

-12-

involvement by the judicial system at this point is improper.[13]

Notably, the trial court did not discuss the fact that we had held in *Holladay II* that Mr. Alexander had been the "primary agitator" and that "[t]he remedy for continued interference by Mr. Alexander is an injunction." *Holladay II*, 2023 WL 4981690, at *2-3. The trial court also did not address its prior findings that the Alexanders had interfered with the Holladays' usage of the easement. Moreover, despite our explicit directions in *Holladay II* and the unmistakably plain language of CR 52.01, the trial court failed to make sufficient findings of fact to explain its decision to deny the Holladays' request for a permanent injunction.

The Alexanders then filed appeal No. 2025-CA-0092-MR, and the Holladays filed cross-appeal No. 2025-CA-0118-MR. We resolve both appeals here.[14]

---

[13] R. at 3089.

[14] "We have considered the parties' extensive arguments and citations to authority but will discuss only the arguments and cited authorities we deem most pertinent, the remainder being without merit, irrelevant, or redundant." *Schell v. Young*, 640 S.W.3d 24, 29 n.1 (Ky. App. 2021). Also, our analysis does not always precisely track that utilized by the trial court or the parties. However, as to the portions of this Opinion which affirm the trial court, our Supreme Court has forcefully commanded that "[i]f an appellate court is aware of a reason to affirm the lower court's decision, it must do so, even if on different grounds." *Mark D. Dean, P.S.C. v. Commonwealth Bank & Tr. Co.*, 434 S.W.3d 489, 496 (Ky. 2014).

-13-

## II. ANALYSIS

### A. The Alexanders' Appeal, No. 2025-CA-0092-MR

#### 1. Issues Presented

Though not specifically listed as such in their briefs, we perceive the Alexanders to be raising four main issues. First, they contend the trial court lacked jurisdiction to order them to restore the parking pad. Second, they contend requiring them to restore the parking pad violates the clause in the easement requiring the dominant estate to maintain and develop the easement. Third, they argue requiring them to restore the parking pad exceeds the relief requested by the Holladays. Fourth, the Alexanders contend the Holladays' failure to post a supersedeas bond means they (the Holladays) must restore the parking pad.

#### 2. Jurisdiction

The Alexanders' jurisdictional arguments are extremely hazy. As we perceive it, the gist of their arguments is that requiring them to return the land to a concrete parking pad would cause them to violate local zoning and land use ordinances or requirements, and the trial court lacks the authority to require them to violate those laws. "The question of jurisdiction is ordinarily one of law, meaning that the standard of review to be applied is de novo." *Appalachian Regional Healthcare, Inc. v. Coleman*, 239 S.W.3d 49, 53-54 (Ky. 2007).

-14-

The Alexanders do not cite which land use laws they would purportedly be required to violate to restore the parking pad. Vague speculation about potential future harm is insufficient to support immediate appellate relief.

Moreover, the record supports the Holladays' argument that restoring the parking pad would not require the Alexanders to violate local land use laws because the previous parking pad had been deemed compliant. For example, Louisville/Jefferson County Metro Government (Louisville Metro) was a party to this underlying action in circuit court for a time. In the order dismissing Louisville Metro as a party, the trial court specifically noted Louisville Metro had provided affidavits from various of its employees which stated:

> the parking area constructed on the easement by the Holladays complies with all Louisville Metro guidelines, permits, regulations and codes and that the improvements on and use of the easement and parking area were not in violation of Louisville Metro guidelines, permits, regulations and codes.[15]

The Alexanders have not shown specific errors in that statement.

Moreover, albeit after the issuance of the order at issue here, we reached a similar conclusion in a related appeal. In *Alexander v. Louisville Metro Historic Landmarks and Preservation Districts Commission*, No. 2022-CA-0160-MR, 2025 WL 1271027 (Ky. App. May 2, 2025) (unpublished), the issue was the

---

[15] R. at 2192, n.2.

-15-

Alexanders' challenge to "a Certificate of Appropriateness [COA] issued to Kirby and Pamela Holladay . . . to build a concrete parking pad with retaining walls in the Old Louisville Historic Preservation District." *Id.* at *1. We affirmed the local government's grant of a COA to the Holladays and rejected each of the Alexanders' sundry challenges thereto. *Id.* at *1-5.

The Alexanders have not shown the trial court lacked jurisdiction to require them to restore the parking pad. Instead, we perceive the trial court afforded the Holladays the relief necessary to effectuate our conclusions in *Holladay I* and *Holladay II*. The Alexanders may challenge any future sanctions which may be imposed upon them for violating local land use laws via the normal process afforded to landowners to contest such sanctions.

### 3. Violation of Terms of Easement

The Alexanders argue that requiring them to return the easement to a concrete pad violates the easement's requirement that the dominant estate, *i.e.*, the Holladays, "maintain and make necessary repairs to the paving and landscaping and . . . develop parking spaces for the benefit of [the dominant estate]." *Holladay I*, 2018 WL 2992976, at *1. The "rights and liabilities" of the parties to an express easement are governed by the easement's terms. *Majestic Oaks Homeowners Association, Inc. v. Majestic Oaks Farms, Inc.*, 530 S.W.3d 435, 439 (Ky. 2017) (citations omitted).

In *Holladay I*, we concluded the concrete parking pad and other improvements made by the Holladays did not violate the easement. *Holladay I*, 2018 WL 2992976, at *8. Consequently, the Holladays had complied with their obligations under the easement to develop parking spaces.

We decline to construe the easement to require the dominant estate to pay to repair damages to improvements on the easement intentionally caused by the servient estate. Where, as here, an express easement's terms are clear and unambiguous, the easement "must be construed according to the terms which the parties have used, to be taken and understood in their plain, ordinary and popular sense." 3 TIFFANY REAL PROP. § 776 (3d ed. Sep. 2025 update). The ordinary meaning of the language in the easement requiring the owners of the dominant estate to make repairs to the easement requires those owners to perform routine maintenance and repairs.

Requiring the owners of the dominant estate to pay for intentional damage to the improvements caused by the owners of the servient estate is illogical and does not follow the normal meaning and scope of the straightforward language in the easement. To accept the Alexanders' argument would permit them to intentionally destroy at will improvements to the easement made by the Holladays since the repair costs would be borne by the Holladays. We refuse to give the

owners of a servient estate a perverse incentive to damage improvements to the easement made by the owners of the dominant estate.

We acknowledge the Alexanders destroyed the parking pad pursuant to an order dissolving the easement. However, we reversed the dissolution of the easement in *Holladay II*. A bedrock principle of Kentucky law is that "the complete reversal of a judgment nullifies it and returns the parties to the positions they occupied before it was rendered. A judgment which has been reversed is as though it had never been, and the court should not allow the party who procured it to retain an advantage gained by reason of it." *Marshall v. Goodwine*, 332 S.W.3d 51, 54 (Ky. 2010) (internal quotation marks and citations omitted). We did not directly order the restoration of the concrete parking pad in *Holladay II*. However, we held in *Holladay I* that the parking pad did not violate the easement, and we held in *Holladay II* that the trial court erred by dissolving the easement. Therefore, our reversal of the trial court's order dissolving the easement meant the parties needed to be returned to the position each enjoyed prior to the issuance of that erroneous order.

The only way to return the parties to that earlier status was to restore the parking pad. Obviously, performing that restoration would not be free. So, the trial court had to determine who would be responsible for the cost of the restoration.

The Holladays had already complied with the terms of the easement by developing the concrete parking pad. The Holladays opposed dissolving the easement, the act which led to the destruction of the parking pad. The Holladays also unsuccessfully moved the trial court to stay its decision dissolving the easement (which would have preserved the concrete parking pad) pending outcome of the appeal.

On the other hand, the Alexanders wanted the easement ended and opposed the Holladays' request to stay the order doing so.[16] The equities heavily favor requiring the Alexanders to pay for the restoration of the pad they destroyed. In hindsight, staying the decision dissolving the easement, and thus preserving the status quo until the appellate process concluded, would have avoided this regrettable scenario.[17]

---

[16] The Alexanders do not point to anything in the record to contradict the Holladays' assertion on page 20 of their brief that the Alexanders opposed the Holladays' motion to stay the order dissolving the easement. The Alexanders did ask this Court to suspend the order requiring them to restore the easement during the pendency of their current appeal but we denied that motion because they had proceeded under the wrong appellate rule, had not shown they would suffer an irreparable injury, and had "waited until after they had defied the trial court's timeline and were subject to a show cause order to move for relief." August 27, 2025 Order Denying Relief Under RAP [Kentucky Rules of Appellate Procedure] 20(C), p. 6.

[17] We recently affirmed a trial court's decision holding that the owners of a servient estate who intentionally rendered an easement "unusable" must restore the easement to a usable condition. *Stage v. Skaggs*, No. 2024-CA-1234-MR, 2025 WL 1843733, at *2 (Ky. App. Jul. 3, 2025) (unpublished), *disc. rev. denied* (Mar. 11, 2026) ("In other words, the Stages took deliberate measures to impede the ability of Skaggs, Hodson, and Phillips to use the easement. We discern no error in the trial court's decision to order the Stages to return the easement to the same condition it was in prior to 2022."). Though not binding and containing somewhat different facts, we construe our decision in *Stage* to be generally consistent with, and supportive of, our

-19-

However, as it pertains to the trial court's specific directive to the Alexanders to restore the parking pad, as our Supreme Court has given guidance. Albeit in a case with a distinguishable fact pattern and procedural history, the Supreme Court stated: "[w]hile it may be unfortunate that the [Alexanders] incurred costs attempting to enforce the . . . judgment, they were on notice that the judgment could be or had been appealed and was subject to reversal, and so must be deemed to have proceeded at their own risk." *Marshall*, 332 S.W.3d at 55.

### 4. Exceeding the Scope of the Holladays' Request for Relief

We readily reject the Alexanders' argument that requiring them to restore the parking pad exceeded the scope of the relief sought by the Holladays. The Holladays sought an injunction, a binding declaration of rights as to the easement, and damages for the destruction of property suffered due to the Alexanders' interference with the easement. After our opinion in *Holladay II* became final, the Holladays filed a motion asking the trial court to require the Alexanders to vacate the easement and pay for its restoration.[18] The issue of repairing the easement, and who would pay for those repairs, was before the trial court.

---

conclusion here that the trial court did not err by requiring the Alexanders to restore the parking pad they destroyed.

[18] R. at 2934-40.

A court has explicit statutory jurisdiction to grant "[f]urther relief, based on a declaratory judgment, order or decree . . . whenever necessary or proper." KRS[19] 418.055. That "further relief" is precisely what occurred here. The trial court properly ordered the impacted area to be returned to the state it was in prior to the issuance of the erroneous order dissolving the easement. *Marshall*, 332 S.W.3d at 54; *see also Turner v. Ewald*, 174 S.W.2d 431, 436-37 (Ky. 1943) ("Although neither the opinion nor the mandate of this court indicated what steps should be taken upon a reversal other than to vacate the judgment appealed from, the restoration of the parties to the status quo, including restitution and accounting for anything paid under it pending the appeal, was consequential relief, the right to which was necessarily implied."). The trial court did not err by requiring the Alexanders to pay for restoring the easement.

### 5. Supersedeas Bond

Finally, we reject the Alexanders' argument that the Holladays' failure to post the supersedeas bond set by the trial court somehow requires the Holladays to pay for repairs to the parking pad. The "intent" of a supersedeas bond is "to provide a means of compensating an appellee upon an affirmance for the damages suffered between the entry of judgment and its affirmance which otherwise would not have been suffered but for the appeal." *Sotak v. Sotak*, 438

---

[19] Kentucky Revised Statutes.

-21-

S.W.2d 490, 491 (Ky. 1969); *see also, e.g.*, *Strunk v. Lawson*, 447 S.W.3d 641, 651 (Ky. App. 2013) ("Filing a supersedeas bond ensures a successful appellee is compensated for damages which otherwise would not have been suffered but for the appeal. If the decision of the circuit court is affirmed or the appeal is dismissed, the bond ensures the appellee receives the compensatory damages awarded by the judgment and additional costs or damages, if proven.") (internal quotation marks and citation omitted). But the Alexanders were not successful in *Holladay II*. Instead, the Holladays, were victorious since we reversed the order dissolving the easement. Therefore, a supersedeas bond was not intended to protect the Alexanders as they were the losing parties in *Holladay II*. We reject the Alexanders' supersedeas bond arguments.

### B.  The Holladays' Cross-Appeal, No. 2025-CA-0118-MR

### 1.  Issues Presented

The Holladays present three main issues. First, they contend the trial court erred by strictly construing the easement. Second, they contend the trial court erred by not issuing a declaration of rights to be recorded in the land records of Jefferson County to counteract a deed of restriction filed by the Alexanders. Finally, the Holladays contend they were entitled to an injunction.

## 2. Strict Construction of Easement

The trial court held the parties must "strictly comply with the plain language of the Easement Agreement. That is, the easement area is to be developed and maintained by the Holladay's [sic] for the express purpose of parking, ingress and egress, a*nd nothing else*."[20] The Holladays argue the easement should be construed broadly.

The "rights and liabilities" of the parties to an express easement are controlled by the easement's terms. *Majestic Oaks Homeowners Association, Inc.*, 530 S.W.3d at 439 (citations omitted). Both the dominant and servient estates "have correlative rights and duties which neither may unreasonably exercise to the injury of the other. The use of an easement must be reasonable and as little burdensome to the landowner as the nature and purpose of the easement will permit." *Commonwealth, Dep't of Fish & Wildlife Resources v. Garner*, 896 S.W.2d 10, 13-14 (Ky. 1995) (citations omitted). Of course, "[t]he nature and extent of an easement must be determined in light of its purposes" and "[e]asements may not be enlarged on or extended so as to increase the burden on or interfere with the servient estate." *Id.* at 14.

We perceive the trial court's ruling that the easement must be strictly construed to follow those general principles. The Alexanders may not interfere

---

[20] R. at 3089.

with the Holladays' enjoyment of the easement, even partially.  *See, e.g.*, *Baker v. Hines*, 406 S.W.3d 21, 26-28 (Ky. App. 2013) (reversing a trial court's decision to allow the owners of a servient estate to construct a fence which would extend slightly into the area encompassed by an easement).  However, the Holladays may not enlarge the easement beyond its stated purposes: ingress, egress, and parking.

Nevertheless, contrary to the Alexanders' view, usage of the easement is not limited only to owners of the dominant estate.  Instead, owners of the dominant estate also may allow their invitees to use the easement for ingress, egress, and parking.  *See, e.g.*, 28A C.J.S. *Easements* § 221 (Feb. 2026 update) ("Although a private right-of-way may not be used by the general public, it may be used by the owner of the way and the owner's family, tenants, servants, and guests, as well as by persons transacting business with her, in the absence of a special agreement to the contrary.").

However, the Holladays do not have the right to use the easement for purposes beyond ingress, egress, or parking, even if those uses would not impose a significant burden upon the servient estate.  *See, e.g.*, 28A C.J.S. *Easements* § 216 (Feb. 2026 update); 28A C.J.S. *Easements* § 232 (Feb. 2026 update) ("The scope of an express easement for a stated purpose cannot be expanded to include a use merely because that use does not impose an added burden on the servient estate.").

The Alexanders own the land. The easement does not grant the Holladays

unlimited ownership rights or the ability to use the land however they desire.

In sum, we perceive the trial court's statement that the easement must

be strictly construed is a correct statement of Kentucky law which holds that

"nothing passes under an easement but what is necessary for its reasonable use and

proper enjoyment." *City of Williamstown v. Ruby*, 336 S.W.2d 544, 546 (Ky.

1960).

### 3. Order Clearing Title

Next, the Holladays argue the trial court was required to issue a

declaration of rights to be entered in the land records of Jefferson County to

counteract a unilateral deed of restriction filed by the Alexanders. The Holladays

construe that deed to be "completely contradictory" to the easement. Holladays'

Brief at p. 32. The Alexanders respond that the deed merely "captures the

restrictive covenant language that applies to properties in the St. James

neighborhood." Alexanders' Reply Brief at p. 32.

The Holladays do not cite to supportive authority for their position.

"Our courts have established that an alleged error may be deemed waived where an

appellant fails to cite any authority in support of the issues and arguments

advanced on appeal." *Hadley v. Citizen Deposit Bank*, 186 S.W.3d 754, 759 (Ky.

App. 2005); *see also, e.g.*, *Koester v. Koester*, 569 S.W.3d 412, 414 (Ky. App.

2019) ("[a]ssertions of error devoid of any controlling authority do not merit relief."). We decline to address this issue further.

### 4. Injunction

Finally, the Holladays argue the trial court erred by denying their request for a permanent injunction. We agree.

In *Holladay II*, we found "the trial court erred in terminating the easement," thus we remanded "the issue of whether a permanent injunction against the Alexanders' interference with the Holladays' use and enjoyment of the easement [was] appropriate." *Holladay II*, 2023 WL 4981690, at \*4. Under Kentucky law, "[i]njunctive relief is proper only where the party seeking such relief has made a clear showing that his rights will be violated and that, as a result, he will suffer immediate and irreparable injury." *Auxier v Commonwealth*, *Bd. Of Embalmers and Funeral Directors*, 553 S.W.2d 286, 288 (Ky. App. 1977). "An injury may be irreparable, even though it would not be if temporary, when constant and frequent recurrences of it assure that no legal action could offer fair and reasonable redress or if the injury is remediable at law only by a multiplicity of lawsuits." 42 AM. JUR. 2D *Injunctions* § 35 (Feb. 2026 update) (footnotes omitted); *see Aboud v. Bailen*, 159 S.W.2d 410, 412 (Ky. 1942)[21]

---

[21] The issue in *Aboud* involved a party partially blocking a right-of-way easement by placing materials such as barrels and sand boxes in it. *Aboud*, 159 S.W.2d at 411. The appellee argued

In *Holladay I*, we held that "under Kentucky Law, if a servient estate owner, in this case the Alexanders, were to block the dominant estate from using the easement, the servient estate would be in violation of the [dominant] estate's rights under the easement." *Holladay I*, 2018 WL 2992976, at *6. And, we have repeatedly recognized the Alexanders' interference with the Holladays' use and enjoyment of the easement. For example, in related litigation regarding whether the Alexanders' homeowners insurance company was required to afford them coverage for the claims made by the Holladays, we held the Alexanders "continued to obstruct the Holladays' use and enjoyment of the easement even after the first panel of this Court expressly ruled [in *Holladay I*] that the easement was appurtenant to the land and enured to the benefit of the Holladays." *Alexander v. Owners Insurance Company*, No. 2021-CA-0959-MR, 2022 WL 2542119, at *3 (Ky. App. Jul. 8, 2022) (unpublished). And in *Holladay II*, we discussed the

---

that the "obstruction of the passway is not of a permanent nature but temporary[.]" *Id.* Kentucky's highest court disagreed and held that an injunction was proper because:

> The obstruction has been continuous, and when the size, weight, and character of the articles continuously maintained in the passway are considered, the use complained of has all the attributes of permanency. In 17 Am. Jur., Easements, section 152, it is said: "Where the obstructions are of a permanent or continuing nature and the damages for each day's obstruction are insignificant, the remedy of successive actions at law for such damages is inadequate and equity will interpose by injunction on the ground that the injury is irreparable and, in certain cases, in order to prevent a multiplicity of suits . . . ."

*Aboud*, 159 S.W.2d at 411-12.

extensive evidence presented by the Holladays at trial regarding how the Alexanders had often interfered with the Holladays' rights to enjoy the easement and held that "according to the evidence, Mr. Alexander was the primary agitator." *Holladay II,* 2023 WL 4981690, at \*2. Furthermore, in the decision which led to *Holladay II*, the trial court even noted the Alexanders had "taken actions to aggravate, exacerbate, and escalate the situation" to the point of having "attempted to take justice into their own hands."[22]

"One of the fundamental underpinnings of our jurisprudence is the law of the case doctrine" and an "aspect of the doctrine is the so-called mandate rule, [which] provides that on remand from a higher court a lower court must obey and give effect to the higher court's express or necessarily implied holdings and instructions." *Hardin v. Jefferson Cnty. Bd. Of Educ.*, 673 S.W.3d 437, 442 (Ky. App. 2023) (internal quotation marks and citations omitted). Instead, the trial court disregarded its own prior findings and the multiple opinions of this Court which held that the Alexanders had violated the easement. The trial court noted its disagreement with the prior appellate decisions, stating its belief that "urban"

---

[22] R. at 2774.

easements should not be bound by the same laws that govern the rest of the Commonwealth.[23]

A trial court may disagree with our decisions, but it cannot disregard them. "The mandate was plain and clear. The opinion on which it was issued is the law of this case. The circuit court has no alternative but to comply with it." *E'Town Shopping Center, Inc. v. Holbert*, 452 S.W.2d 396, 397 (Ky. 1970).

Our Supreme Court has held that "a trial court's ruling granting or denying injunctive relief is reviewed under the abuse of discretion standard[.]" *Price v. Paintsville Tourism Comm'n*, 261 S.W.3d 482, 484 (Ky. 2008). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Zeitz v. Kulkarni*, 698 S.W.3d 709, 712 (Ky. App. 2024) (citation omitted). A decision which does not comply with binding authority (such as CR 52.01 or the prior decision of an appellate court) is unsupported by sound legal principles.

The trial court's minimal findings of fact in its order of December 20, 2024, gave an incomplete and distorted account of the history of this action. The findings are facially insufficient to support a decision to deny the requested

---

[23] As stated by the trial court in its order of December 20, 2024: "This Court fundamentally disagrees with the appellate courts in this case. This Court believes that the Court of Appeals has continuously failed to appreciate the unique factual circumstances and context of this case, specifically with regards to the urban nature of this fifteen by thirty[-]foot easement that is markedly distinct from the previous common law of easements in this state."

injunction and are contradictory to the law of the case. Nor did the trial court's decision comply with our plain directive in *Holladay II* to make adequate findings of fact in support of an express decision resolving the merits of the Holladays' request for an injunction.

"[A]n injunction is the appropriate remedy for enforcement of a real property right because the violation of a real property interest is deemed irreparable and the owner protected in the enjoyment of his or her property whether such be sentimental or pecuniary." 42 AM. JUR. 2D *Injunctions* § 54 (Feb. 2026 update). Kentucky precedent follows the same general principles. In short, in Kentucky "[t]he enjoyment of an easement will be protected by an injunction." 3 KY. PRAC. *Real Estate Transactions* § 11:35 (Oct. 2025 update).

We found in *Holladay II* that an easement existed, and in multiple decisions the appellate courts of the Commonwealth have held that the Alexanders have improperly interfered with the Holladays' enjoyment of that easement. For these reasons, the issuance of a permanent injunction is proper and upon remand the trial court is instructed to enter an order in accordance with this Opinion.

## III. CONCLUSION

For the foregoing reasons, the Jefferson Circuit Court is affirmed in Appeal No. 2025-CA-0092-MR. The Jefferson Circuit Court is affirmed in Appeal No. 2025-CA-0118-MR except as to the denial of a permanent injunction. The

portion of the circuit court's opinion denying the issuance of a permanent injunction is reversed and remanded. On remand, the trial court shall expeditiously issue an order granting the Holladays' request for a permanent injunction.

ALL CONCUR.

BRIEFS FOR APPELLANTS/CROSS-APPELLEES:

Brian H. Stephenson
Louisville, Kentucky

BRIEFS FOR APPELLEES/CROSS-APPELLANTS:

John H. Dwyer, Jr.
Louisville, Kentucky

Janice M. Theriot
Louisville, Kentucky